☒ FILED ___ LODGED
___ RECEIVED ___ COPY

FEB 23 2022

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____NM_____ DEPUTY

# UNITED STATES DISTRICT COURT
for the
District of Arizona

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. 22-1280 MB
)
One TCL cellular telephone )
(IMEI: 016000001700832) )
)

## SEARCH AND SEIZURE WARRANT

To:   Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ District of _____Arizona_____
*(identify the person or describe the property to be searched and give its location):*
As described in Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized):*
As set forth in Attachment B.

YOU ARE COMMANDED to execute this warrant on or before ___3/9/2022___ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.    ☒ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to   any U.S. Magistrate Judge in the District of Arizona.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:  2/23/2022 at 9:52 am    _____
                                                *Judge's signature*

City and state:   Yuma, Arizona          James F. Metcalf, United States Magistrate Judge
                                          *Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a dark colored TCL smartphone, IMEI number 016000001700832 (hereafter the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located at 4151 S. Avenue A Yuma, AZ 85365.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii), including alien smuggling activity, and other communications of other illegal activity. Individuals involved in alien smuggling activity use these devices to coordinate the transport and housing of aliens, facilitate the collection and movement of currency, and communicate with members of the ASO about the specific operations of that ASO.

   a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

   c. all bank records, checks, credit card bills, account information, or other financial records;

   d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e. any information recording schedule or travel;

   f. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   g. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT'S CELLULAR TELEPHONES showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

___ FILED ___ LODGED
___ RECEIVED ___ COPY

FEB 23 2022

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

| | |
|---|---|
| In the Matter of the Search of One Cellular Telephone: TCL, IMEI: 016000001700832 | Case No. 22-1280MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

Located in the District of Arizona, there is now concealed:

The person or property to be searched, described above, is believed to conceal:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 8 U.S.C. § 1324 | Transporting Illegal Aliens |

The application is based on these facts:

**See attached Affidavit of Border Patrol Agent Jamere O. Bufford**

☒ Continued on the attached sheet.
☐ Delayed notice of _30_ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Louis C. Uhl

*Louis Uhl*

_Jamere O. Bufford_
*Applicant's Signature*

Jamere O. Bufford, Border Patrol Agent-Intelligence
*Printed name and title*

Subscribed and sworn telephonically before me.

Date: 2/23/2022

_____
*Judge's signature*

Honorable James F. Metcalf, U.S. Magistrate Judge
*Printed name and title*

City and state: Yuma, Arizona

## ATTACHMENT A

*Property to be searched*

The property to be searched is a dark colored TCL smartphone, IMEI number 016000001700832 (hereafter the "SUBJECT CELLULAR TELEPHONE"). The SUBJECT CELLULAR TELEPHONE is currently located at 4151 S. Avenue A Yuma, AZ 85365.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONE for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

*Property to be seized*

1. Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONE that relate to violations of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii), including alien smuggling activity, and other communications of other illegal activity. Individuals involved in alien smuggling activity use these devices to coordinate the transport and housing of aliens, facilitate the collection and movement of currency, and communicate with members of the ASO about the specific operations of that ASO.

    a. all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

    b. all information related to buyers or sources of drugs (including names, addresses, telephone numbers, locations, or any other identifying information);

    c. all bank records, checks, credit card bills, account information, or other financial records;

    d. all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

    e. any information recording schedule or travel;

    f. evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

    g. contextual information necessary to understand the above evidence.

2. Any records and information found within the digital contents of the SUBJECT'S CELLULAR TELEPHONES showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history;

As used above, the terms "records" and "information" includes records of telephone calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and device information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Border Patrol Agent-Intelligence (BPA-I) Jamere Bufford, being first duly sworn, hereby deposes and states as follows:

### I.   INTRODUCTION AND AGENT BACKGROUND

1.  Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure, for a search warrant authorizing the examination of a cellular telephone belonging to Francisco Javier RAMOS (hereinafter "RAMOS' cell phone), described below and in Attachment A, and the extraction of electronically stored information from that property, as further described in Attachment B. Because this affidavit is being submitted for the limited purpose of securing a warrant to search the property listed in Attachment A, I have set forth only the facts that I believe are necessary to establish probable cause to believe evidence of violations of Title 8 United States Code, Sections 1324(a)(1)(A)(ii) and (iii) (transportation and harboring of aliens) is contained in the property described below and in Attachment A.

2.  I am a BPA-I with Department of Homeland Security/Office of Border Patrol (DHS/OBP), Yuma Sector Intelligence Unit. I have been a BPA since August of 2009, and currently serve as an Intelligence Agent with Yuma Sector Intelligence Unit.

3.  In December of 2009, I completed the BPA Basic Training and basic law enforcement training at the Federal Law Enforcement Training Center in Artesia, New Mexico. I have been permanently assigned to multiple Border Patrol Stations in multiple sectors. These stations include: Gibraltar Station in Detroit Sector, Detroit Station in Detroit Sector, El Paso Station in El Paso Sector, Santa Teresa Station in El Paso Sector, and the Special Operations Detachment in El Paso Sector. I am a member of the United States Border Patrol Mobile Response Team, in which I have gained much experience in the operations of various illicit smuggling organizations in various regions of the United States. I have been exposed to casework involving both alien and drug smuggling cases, along with the legal guidelines associated with this line of work. I have also gathered and

interpreted criminal records, interviewed multiple principals and material witnesses, and also properly executed the dissemination of information through the proper channels.

4. By virtue of my duties as an Intelligence Agent, I have performed various tasks that include, but are not limited to: (a) functioning as a surveillance agent, thus observing and recording movements of persons performing criminal acts, and those suspected of performing criminal acts; and (b) interviewing witnesses, cooperating sources and sources of information relative to the smuggling of aliens and the distribution of monies and assets derived from the smuggling of aliens (to include the laundering of alien smuggling proceeds).

5. In the course of conducting alien smuggling investigations, I have personally interviewed persons involved in the smuggling of aliens. I have consulted with other experienced investigators concerning the practices of alien smugglers and the best methods of investigating them. This Affidavit contains facts based both on my personal knowledge, and on information that I have obtained by conferring with other special agents and law enforcement officials involved in this investigation.

6. The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training, and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers.

7. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

II. **BASIS FOR PROBABLE CAUSE**

8. On February 14, 2022, at approximately 0308 hours, Yuma Border Patrol Station Duty Desk (857) received a call from a citizen reporting what appeared to be a human smuggling event about a mile east of Ogilby Road on Interstate 8 (I-8) in

2

Winterhaven, Imperial County, California, within the Southern District of California. The reporting party advised agents that a tan Ford sedan appeared to be involved in suspicious activity. 857 (Yuma Sector surveillance camera) advised Border Patrol Agents in the area of the possible human smuggling event. Border Patrol Agent Kevin M. Drake parked on Andrade Road to monitor vehicle traffic. At approximately 0311 hours, agent Drake observed a vehicle matching the description (tan Ford 500) traveling east bound.

9. While driving in his assigned Border Patrol Unit, agent Drake managed to position himself closer to the Ford 500 for a more advantageous view. Agent Drake observed multiple subjects in the vehicle all wearing tan clothing. Due to agent Drake's extensive experience, he is aware that it is a common occurrence for subjects who have recently entered the United States illegally to wear tan clothing in attempt to camouflage themselves with the sandy, desert terrain of the Imperial Sand Dunes.

10. At approximately 0314 hours, agent Drake initiated an emergency equipment of his clearly marked Border Patrol Unit and the vehicle yielded to a stop on the side of the road. As agent Drake approached the vehicle, he noticed four subjects sitting in the rear of the vehicle, which is designed to seat a total of three individual only. Agent Drake also noticed one subject wearing tan colored clothing who was sitting in the front passenger seat. At that time, agent Drake identified himself as a United States Border Patrol Agent and directed the driver (later identified as RAMOS, Francisco Javier) to turn off the vehicle, hand him the keys and to show him his hands. To conduct his investigation, Agent Drake had the driver exit the vehicle and detained him with hand cuffs. After discovering that all of the passengers were present in the United States illegally, agent Drake advised the driver and all five passengers that they were under arrest.

11. In Agent Drake's search incident to arrest, he and Border Patrol Agent P. Tafoya discovered marijuana in the vehicle's glove box. After seizing the vehicle, RAMOS' cellular phone (which, was in his pants pockets) and the marijuana, Apple Towing company was called. At approximately 0534 hours Apple Towing arrived on

scene, retrieved the vehicle and transported it to the Yuma Border Patrol Station. At this time, all Border Patrol Agents who were present were cleared from the scene.

12.  RAMOS' cell phone is currently in the lawful possession of United States Border Patrol (USBP), as it was seized during the incident to arrest. Therefore, I seek this warrant out of an abundance of caution to be certain that an examination of the device will comply with the Fourth Amendment and other applicable laws.

13.  RAMOS' cell phone is currently in storage at the Yuma Border Patrol Station at 4151 S Avenue A, Yuma, AZ 85365. In my training and experience, I know that RAMOS' cell phone has been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when RAMOS' cell phone first came into the possession of the United States Border Patrol.

### III. ITEMS TO BE SEIZED

14.  Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of RAMOS' cell phone.

15.  Based upon my knowledge, experience, and training in Alien Smuggling Organization (ASO) investigations, as well as the training and experience of other law enforcement officers with whom I have had discussions, I know that individuals involved in alien smuggling activity tend to:

a) Retain records pertaining to financial transactions and the persons for whom the transactions are being conducted, including names and nationalities of smuggled aliens, as well as monies owed and/or paid for alien smuggling;

b) Collect data pertaining to other co-conspirators involved in alien smuggling activity;

c) Possess and maintain records reflecting bank transactions and/or money transfers relating to alien smuggling activity;

4

d) Maintain collections of records that are in digital or electronic format in a safe, secure, and private environment, including electronic communication devices (such as the Target Phones). These records are often maintained for several years in close proximity to the alien smuggler, usually at the individual's residence, to enable the alien smuggler to review the records, which are highly valued;

e) Correspond with and/or meet with other alien smuggling associates to share alien smuggling information and/or materials;

f) Retain correspondence from other alien smuggling co-conspirators relating to alien smuggling activity;

g) Maintain lists of names, addresses, and/or telephone numbers of individuals with whom the alien smugglers have been in contact and/or conducted alien smuggling activity.

16. Based on my training and experience, as well as the training and experience of other law enforcement officers participating in this investigation and with whom I have conferred, I know that Alien Smuggling Organizations (ASOs) utilize cellular telephones (such as RAMOS' cell phone) to facilitate alien smuggling activity, and to communicate when conducting their illegal activity, utilizing the voice, text, and electronic mail (if accessible) functions of cellular telephones to do so. Individuals involved in alien smuggling activity use these devices to coordinate the transport and housing of aliens, facilitate the collection and movement of currency, and communicate with members of the ASO about the specific operations of that ASO. These cellular telephones usually contain electronically stored data on or within the cellular telephones, including contact names and numbers of alien smuggling associates; call details, including call history, electronic mail (email) messages, text messages and/or text message history; and digital images of alien smuggling associates and/or activity. All of this information can be used to identify and locate alien smuggling associates, identify methods of operation of the ASO, and corroborate other evidence obtained during the course of an investigation.

17. In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONE.

### IV. DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

18. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of RAMOS' cell phone. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

19. *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the RAMOS' cell phone for at least the following reasons:

    a. Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

    b. Based on my knowledge, training, and experience, your Affiant knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other

6

communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

    c.    Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

    d.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

20.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found in the contents of the RAMOS' cell phone because:

    a.    Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the

8

owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

      c.     A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

      d.     The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

      e.     Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

21.   *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of RAMOS' cell phone, including the use of computer-assisted scans.

22.   *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not

involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

V. **CONCLUSION**

23. Your Affiant submits there is probable cause to believe probable cause to believe that the property listed in Attachment A (RAMOS' cell phone) contains evidence related to the transportation and harboring of aliens, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(ii) and (iii). For this reason, I respectfully request that this Court issue a search warrant authorizing a search of RAMOS' cell phone listed in Attachment A to seize the items of evidence listed in Attachment B.

*[signature]*

Border Patrol Agent-Intelligence Jamere O. Bufford
United States Border Patrol

Subscribed and sworn to before me telephonically this 23rd day of February, 2022.

*[signature]*

HONORABLE James F. Metcalf
United States Magistrate Judge

10